Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TIMOTHY SHELLEY,

    *Plaintiff*,

v.

LINDEN HIGH SCHOOL AND LINDEN PUBLIC SCHOOLS,

    *Defendants*.

Civil Action No. 19-20907
(JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter arises from Plaintiff's allegations that he was abused while attending a one-week long soccer camp during the summers of 1976, 1977, and 1978. Presently before the Court is a motion to dismiss Plaintiff's Second Amended Complaint brought by Defendants Linden High School and Linden Public School (the "Schools"). The Court reviewed all the submissions in support and in opposition[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, the motion to dismiss is **GRANTED**.

---

[1] Defendants' brief in support of their motion is referred to as "Def. Br.," D.E. 33-1; Plaintiff's brief in opposition is referred to as "Opp. Br.," D.E. 35. Defendants' reply brief will be referred to as "Reply," D.E. 36.

## I. FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

The Court incorporates by reference the factual background included in its November 2, 2020 opinion ("Prior Opinion"). D.E. 24. Because Plaintiff provides a more detailed factual background in the SAC than was alleged in the Complaint, the Court summarizes Plaintiff's allegations below.

*Pro se* Plaintiff Timothy Shelley alleges that during the summers of 1976, 1977, and 1978, he attended a one-week-long soccer camp held at Defendant Linden High School, which is part of Defendant Linden Public Schools. SAC at 1.[3] Plaintiff's previous Complaint indicated that this camp was run by the Westfield Area YMCA. D.E. 1 at 4. During these summers, he was six, seven, and eight years old. SAC at 1.

The SAC alleges that Plaintiff and others attending the camp were "injected with hypodermic needles"; "periodically given an orange liquid to drink"; and taken to swim at the YMCA "where the pool was heavy with chlorine" and their eyes stung and appeared red. *Id.* at 2. Plaintiff continues that, inside the school, "a young man, called Gene" showed Plaintiff his soccer ball and hypnotized Plaintiff by "spinning the ball on his finger" and instructing Plaintiff "to look at the geometric patterns" on the soccer ball and "to count the shapes and their sides." *Id.* at 2-3.

Plaintiff further alleges that he was "made to watch a pornographic film," and subsequently brought upstairs "where a woman was raped in front of him," despite his efforts to "attack[] one of the men . . . to protect the woman." *Id.* at 3. The man "threw Plaintiff aside, and he crashed

---

[2] The factual background is taken from the Second Amended Complaint ("SAC"), D.E. 29-1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] The SAC and the Complaint are referenced by page number because Plaintiff does not include numbered paragraphs in these pleadings.

2

into some medical equipment" and was then "physically restrained and injected with a hypodermic needle." *Id.* Plaintiff indicates he was told by "[a]dults" that "if he did not obey, and if he told anyone, they would rape his mother and everyone he knew." *Id.*

The SAC alleges that Plaintiff was at times sent from the soccer fields "to see the nurse," where he was "offered an orange liquid to drink" and "physically restrained by an adult male . . . who shouted, 'Hold him down!' and 'Be still when I give this to you!'" *Id.* at 4. The SAC further alleges that "Plaintiff was made to watch rape scenes from popular television programs" and forced to "masturbate, with an i.v. in his arm." *Id.* As a result of these experiences, Plaintiff "saw a psychologist about half a dozen times," had nightmares, and "began to masturbate on a daily basis" at the age of seven. *Id.* Plaintiff submits that he did not remember any of the abuse "until recently, when ugly memories came flooding back." *Id.*

Plaintiff filed a Complaint on November 27, 2019 against the Schools and the Westfield Area YMCA.[4] D.E. 1. The Complaint asserted the following claims: (1) assault and battery; (2) false imprisonment; (3) negligence; and (4) intentional infliction of emotional distress. The Schools moved to dismiss, D.E. 17, which this Court granted, D.E. 24, 25. The Court granted Plaintiff leave to amend, D.E. 24, 25, and Plaintiff filed a First Amended Complaint on November 16, 2020, D.E. 27, and a SAC on November 24, 2020, D.E. 29. The SAC alleges one count of negligence against the Schools. Defendants followed with the present motion, D.E. 33, which Plaintiff opposed, D.E. 35,[5] and to which Defendant replied, D.E. 36.

---

[4] On April 13, 2020, the claims against Defendant Westfield Area YMCA were dismissed with prejudice. D.E. 19.

[5] It appears that Plaintiff filed an initial opposition brief on January 28, 2021, D.E. 34, and then filed a second entry with an identical brief on February 5, 2021, which also includes a proposed order and certification.

3

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, courts must separate the factual and legal elements. *Fowler*, 578 F.3d 203, 210 (3d Cir. 2009). While restatements of the elements of a claim are legal conclusions and are not entitled to a presumption of truth, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011), the Court "must accept all of the complaint's well-pleaded facts as true," *Fowler*, 578 F.3d at 210. However, "[e]ven if plausibly pled . . . a complaint will not withstand a motion to dismiss if the facts alleged do not state 'a legally cognizable cause of action.'" *Rogers v. New Jersey*, 2017 U.S. Dist. LEXIS 111213, *3 (D.N.J. July 18, 2017) (quoting *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 U.S. Dist. LEXIS 185621, at *2 (D.N.J. Jan. 23, 2015)).

Because Plaintiff is proceeding *pro se*, the Court construes the SAC liberally and holds it to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court, however, need not "credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906

(3d Cir. 1997)). *Pro se* litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III. **ANALYSIS**

This case is before the Court on diversity jurisdiction, 28 U.S.C. § 1332. The Court, therefore, evaluates Plaintiff's negligence claim under "the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The alleged tortious conduct occurred in New Jersey and the parties appear to agree that New Jersey substantive law applies to this case. Seeing no clear reason to deviate from the parties' assumptions, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys "R" Us, Inc.*, No. 12-3072, 2013 U.S. Dist. LEXIS, at *5 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the . . . claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

The SAC asserts a negligence claim against Defendants. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (quoting *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014)). Defendants contend that the SAC should be dismissed because "Plaintiff has failed to plead facts sufficient to establish, as a matter of law, (1) any duty owed to him by the Schools or (2) any breach of that duty." Def. Br. at 6.

Plaintiff indicates that his negligence claim is brought under a theory of premises liability. SAC at 4. He does not appear to allege that the Schools or their employees harmed him; rather, the allegations suggest that the Schools had a duty to prevent harm inflicted by third-party actors.

5

Additionally, Plaintiff does not contend that while he was at the camp, he was in the care or custody of the Schools. Instead, the SAC only indicates that Plaintiff was on the Schools' property when he was harmed.

The SAC alleges that because Defendants "are, own, and run the School[s]," they "had a duty to protect Plaintiff . . . from abuse at the School, which they breached when they allowed him to be assaulted and battered on their premises in connection with a soccer camp" that they permitted to be held on their premises. *Id.* at 4-5. "When a person alleges that a landowner has acted negligently, the existence of a duty by a landowner to exercise reasonable care to third persons is generally governed by the status of the third person – guest, invitee, or trespasser – particularly when the legal relationship is clearly defined."[6] *Robinson*, 86 A.3d at 124.

Defendants contend that if the relationship between Defendants and Plaintiff is not ambiguous, Plaintiff was a licensee. In opposition, Plaintiff argues that he was an invitee. "The invitee comes by invitation, express or implied, generally for some business purpose of the owner." *Rowe v. Mazel Thirty, LLC*, 34 A.3d 1248, 1253 (N.J. 2012). "The licensee is permitted to come upon the property, and does so for his own purposes." *Id.* If Plaintiff was a licensee, the Schools "[did] not have a duty to discover latent defects," but did have a duty to "warn . . . of any dangerous conditions of which the [Schools] had actual knowledge and of which [Plaintiff] [was] unaware." *Id.* If Plaintiff was an invitee, the Schools "owe[d] a duty of reasonable care to guard against any dangerous condition on [their] property that the [Schools] either kn[ew] about or should have discovered." *Id.* at 1253-54. The duty owed to an invitee requires the landowner "to conduct a reasonable inspection to discover latent dangerous conditions." *Id.* at 1254.

---

[6] Defendants submit that tort claims against a public entity, such as the Schools, are governed by New Jersey's Tort Claims Act, N.J. Stat. Ann. § 59:1-1 *et seq.*, however, New Jersey Courts have construed this law to comport with common-law landowner liability. Def. Br. at 5.

6

Based on the allegations in the SAC, the status of Plaintiff vis-à-vis the Schools does not clearly fit into either category.[7] The SAC merely alleges that the Schools allowed the camp to use its facilities "either for free, as consistent with the purposes of the School, or for rent, funneled from Plaintiff's parents, to the soccer camp, and thence to the Defendants." SAC at 5-6. As a result, the Court must "perform a full duty analysis" to determine whether the Schools owed a duty of care to Plaintiff. *Rowe*, 34 A.3d at 1254.

The New Jersey Supreme Court has instructed that

> [w]hether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.

*Estate of Desir v. Vertus*, 69 A.3d 1247, 1258 (N.J. 2013) (internal citations omitted) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993)).

The SAC does not include facts from which the Court could conclude that the Schools owed Plaintiff a duty. Plaintiff's abuse is alleged to have occurred on the premises of Linden High School, SAC at 1, but the SAC otherwise fails to allege any facts showing a relationship between Plaintiff and the Schools. Also absent from the SAC are allegations concerning the nature of the attendant risk. Plaintiff does not allege, for example, that the Schools were aware of any prior abuse or misconduct by the YMCA that ran the soccer camp. Plaintiff also fails to allege that the Schools had an ability or opportunity to exercise care. For example, there is no indication that

---

[7] Even if the SAC had adequately alleged that the Schools owed Plaintiff a duty because he was a licensee or an invitee, the SAC fails to sufficiently allege that the Schools breached the duty they owed. There are no allegations that the Schools knew or should have known that anyone affiliated with Plaintiff's soccer camp posed a danger and the SAC is devoid of any allegations that the Schools failed to conduct an inspection to discover latent dangerous conditions.

employees of the Schools were present during the soccer camp and no allegation that the Schools had the ability to investigate and approve the individuals permitted to work at the soccer camp. The SAC also fails to include relevant allegations as to whether the public interest is best served by holding the Schools liable.[8] As for fairness, "[i]t has historically been held that individuals, including business premises owners, are not generally responsible for the criminal acts of others," *Estate of Desir v. Vertus*, 69 A.3d 1247, 1255 (N.J. 2013), and Plaintiff fails adequately to allege why the circumstances in this case warrant a departure from this general proposition.

The Court finds that Plaintiff has failed to plausibly allege that the Schools owed him a duty and, as a result, Defendants' motion to dismiss is granted. The Court will permit Plaintiff one additional opportunity to file an amending pleading without prejudice.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** and Plaintiff's claims are dismissed without prejudice. Plaintiff has thirty (30) days to file a third amended complaint that cures the deficiencies noted herein. If Plaintiff does not, then this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: July 7, 2021

John Michael Vazquez, U.S.D.J.

---

[8] Plaintiff's opposition brief states that "Linden Schools had the ability to control Plaintiff's attackers" and "the power to prevent these acts" and that "it is fair to impose a duty on a school" in these circumstances. Opp. Br. at 10, 11, 14. In addition to being conclusory assertions, these arguments were not properly raised. As the Court explained in the Prior Opinion, an opposition brief cannot be used to amend the complaint. Because these arguments are unsupported by allegations in the SAC, the Court does not consider them.