**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY SHELLEY,<br><br>   *Plaintiff*,<br><br>v.<br><br>LINDEN HIGH SCHOOL AND LINDEN PUBLIC SCHOOLS,<br><br>   *Defendants*. | Civil Action No. 19-20907<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

  This matter arises from Plaintiff's allegations that he was abused while attending a one-week long soccer camp during the summers of 1976, 1977, and 1978. Presently before the Court is a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's Third Amended Complaint brought by Defendants Linden High School and Linden Public School (the "Schools"). The Court has reviewed the parties' submissions[1] and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Schools' motion is **GRANTED**.

---

[1] The Schools' brief in support of the motion, D.E. 47-1 ("D. Br."); Plaintiff's brief in opposition, D.E. 48 ("Opp'n"); and the Schools' reply to Plaintiff's opposition, D.E. 49 ("D. Reply").

I.    **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The Court incorporates by reference the factual background included in its July 7, 2021 opinion. D.E. 37 ("Prior Opinion"). Because Plaintiff provides further background in the Third Amended Complaint in response to the Prior Opinion, the Court summarizes Plaintiff's allegations.

In "the summers of 1976, 1977, and 1978," Shelley attended one-week-long soccer camps at Defendant Linden High School, which is under the purview of Defendant Linden Public Schools. D.E. 41 ("TAC") ¶ 6. The Schools themselves did not run the camps; instead, they were run by the Westfield Area YMCA. *Id.* ¶ 71; Prior Opinion at 2.

When the children were inside the school building, they were made to take off their shoes so that they did not scuff or tarnish the floors. TAC ¶¶ 7-8. Plaintif and the other children attending the camp "were injected with hypodermic needles[]" that were compared to vaccines and were allegedly necessary for the camp. *Id.* ¶¶ 9-10. The children were "given an orange liquid to drink" and were taken to swim in a pool at a YMCA that was laden with chlorine, which stung and reddened their eyes. *Id.* ¶¶ 11-12. Plaintff was so exhausted by partaking in camp activities that that he floated "in the fetal position[]" in the pool and was all but paralyzed by fatigue at home. *Id.* ¶¶ 13-14.

At the camp, the "children were drugged," and a man named Gene hypnotized Plaintiff by spinning a soccer ball, which had hexagons and pentagons on its sides, on his finger. *Id.* ¶¶ 15-16. The children were also shown a variety of films—some were appropriate for the camp, including films that concerned soccer. *Id.* ¶ 18. But the children were also forced to watch pornography, which distressed Plaintiff and caused him to ask to leave. *Id.* ¶¶ 17, 19. He was additionally forced to view video depictions of rape from the television shows "Danger Island"

and "Wonder Woman." *Id.* ¶ 27. Plaintiff alleges that he witnessed a rape in person, which he attempted to to stop by shouting at and attacking one of the perpretators. *Id.* ¶ 20. Plaintiff was thrown "into some medical equipment[,]" and then himself "physically restrained and injected with a hypodermic needle." *Id.* ¶¶ 21-22. "[A]dults threatened Plaintiff, telling him that if he did not obey, and if he told anyone, they would rape his mother and everyone he knew." *Id.* ¶ 23.

While attending the camp, Plaintiff was sometimes sent from the soccer field into the school building for visits with the nurse, who would offer him orange drinks. *Id.* ¶¶ 24-25. Plaintiff resisted and an adult man held him down, "shouting, 'Hold him down!' and 'Be still when I give this to you!'" *Id.* ¶ 26. Plaintiff was also forced to "masturbate, with an i.v. in his arm while a song[]" by the band the Banana Splits played. *Id.* ¶ 28.

Plaintiff suffered immediate and intense trauma. *Id.* ¶¶ 29-32. He repressed his memories of the camp until a short time before he filed his initial complaint. *Id.* ¶ 33.

Plaintiff maintains that the Schools' "business purposes . . . are to provide an environment for children to learn[,]" and quotes "the District Mission Statement" as describing that environment as "including not only teachers but also coaches and athletic directors—much like the counselors at the camp whom Defendants allowed to use the School Building." *Id.* ¶ 40. Plaintff says that the camps' presence on the campus was "implicitly sanctioned by Defendants[]" for a purpose consistent with fostering that learning environment. *Id.* ¶ 42. Plaintiff continues that "the criminal acts of others became foreseeable as awareness of child abuse arose in the 1970s." *Id.* ¶ 45. Specifically, he avers that the enactment of the Child Abuse Prevention and Treatment Act of 1974 ("CAPTA"), 42 U.S.C. § 67, *et seq.*, and the contemporaneous establishment of the National Center on Child Abuse and Neglect evidence that the Schools' awareness "of the dangers of child abuse" would have increased "so that the foreseeability of such dangers would have increased, and

their duty to protect children within the School building would have increased." *Id.* ¶¶ 46-47.  He describes the Schools' facilities as such "that child molesters could easily be attracted to the summer camp held within the School Building." *Id.* ¶ 52.  He explains that his allegations span multiple years, and are not "a one-off incident in which a criminal unforeseeably appeared on Defendants' property." *Id.* ¶¶ 54-55.  Plaintiff alleges that the Schools "endorsed the camp by allowing it to use their" facilities, and thereby lulled the childrens' parents into a false sense of security.  *Id.* ¶ 63.  He reasons that children are less safe in private than when in the view of the public, and that "Plaintiff's assailants would not have assaulted him if Defendants had not let them into their building and had kept the soccer camp on the School's outdoor fields." *Id.* ¶¶ 64-65; *see also id.* ¶ 66.

Plaintiff infers that his parents paid the YMCA, who operated the camp, because his parents were under the impression that he would be safe at school facilities. *Id.* ¶ 70-71.  He further infers that the YMCA, in turn, paid Defendants, "so that Plaintiffs' parents' money went through the YMCA to Defendants." *Id.* ¶ 72.  He alleges that the school facilities were locked and barred entry to all except the Schools' personnel, who, when "they unlocked each morning of the camp, . . . could have observed and interacted with the counselors and the children, and noticed any indicators of abuse." *Id.* ¶¶ 74-75.  Plaintiff refers to his memory of freshly waxed floors as evidence of school personnel's presence. *Id.* ¶¶ 77-78.  He accuses school personnel of failing to conduct background checks or investigate the presence of medical equipment. *Id.* ¶¶ 110-11.

Plaintiff filed his initial Complaint on November 27, 2019.  D.E. 1.  The Schools moved to dismiss, and the Court granted their motion.  D.E. 17; D.E. 24; D.E. 25.  Plaintiff then filed a First Amended Complaint followed by a Second Amended Complaint ("SAC").  D.E. 27; D.E. 29.  The SAC brought a single claim of negligence against the Schools.  D.E. 29.  The Schools moved to

4

dismiss the SAC, and the Court granted the motion. D.E.33; D.E. 37; D.E. 38. Plaintiff then filed the operative TAC, which the Schools have moved to dismiss.

II.     **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted[.]" To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

In evaluating the sufficiency of a complaint, a district court must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). A court "must accept all of the complaint's well-pleaded facts as true." *Id.* at 210. A court, however, does not credit labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). But even if plausibly pled, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Because Plaintiff is proceeding pro se, the Court construes the TAC liberally and holds it to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court, however, need

not "credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Pro se litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III. ANALYSIS

The TAC asserts a negligence claim against the Schools. *See* TAC ¶¶ 3-5. Plaintiff brings this claim under a theory of premises liability. *See id.* ¶ 3. The Schools move to dismiss Plaintiff's negligence claim on the basis that the TAC does not allege sufficient facts to impose a common-law tort duty on them. D. Br. at 1.

To establish negligence under New Jersey law,[2] Plaintiff must plead four elements: "(1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation; and (4) damages." *Jackson-Locklear v. William Patterson Univ.*, No. 16-5449, 2018 WL 1942521, at *3 (D.N.J. Apr. 24, 2018). Whether a duty of care exists is generally a question decided by a court as a matter of law. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 915 (N.J. 2019).

"When a person alleges that a landowner has acted negligently, the existence of a duty by a landowner to exercise reasonable care to third persons is generally governed by the status of the third person—guest, invitee, or trespasser—particularly when the legal relationship is clearly defined." *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014). An invitee comes onto a property by an expressed or implied invitation from the owner for a business purpose. *Rowe v. Mazel Thirty, LLC*, 34 A.3d 1248, 1253 (N.J. 2012). A licensee is "permitted to come onto the property and does

---

[2] For the reasons stated in the Prior Opinion, the Court applies New Jersey law. Prior Opinion at 5.

so for his own purposes." *Id*. Landowners owe a duty to guard against dangerous conditions on the property only to invitees. *Id*. at 1253-54.

The Schools contend that Plaintiff should be treated as a licensee because the camp he attended was run by a third party. D. Br. at 9. Plaintiff renews his argument that he was an invitee on the basis that he was on the Schools' property to partake in physical education (the advancement of which is part of the Schools' stated mission), and adds that he should be regarded as a student of the Schools. Opp'n ¶ 17;[3] TAC ¶ 37. This Court previously considered whether Plaintiff was an invitee or a licensee and found that "the status of Plaintiff vis-à-vis the Schools does not clearly fit into either category." Prior Opinion at 7 (footnote omitted). Plaintiff's status remains ambiguous. Although Plaintiff was on the Schools' property for a purpose germane to their mission statement and his parents paid for his attendance, it does not appear that the Schools themselves held out an invitation to Plaintiff, and his inference that the Schools received compensation from his parents' payments is not plausibly asserted. As a result, the Court, as it did in the Prior Opinion, will conduct a fulsome duty analysis. *Est. of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1255 (N.J. 2013).

In evaluating whether a duty of care exists under New Jersey law, courts first analyze the foreseeability of the harm and then determine whether "fairness and policy consideration support the imposition of a duty." *Coleman v. Martinez*, 254 A.3d 632, 642 (N.J. 2021) (quoting *Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007)). If foreseeability is established, courts then weigh four additional factors, including the relationship of the parties, the nature of the risk, a defendant's opportunity and ability to exercise reasonable care, and public policy considerations. *Coleman*, 254 A.3d at 642-43 (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993)).

---

[3] Like his TAC, Plaintiff's opposition to the motion is set forth in a series of numbered paragraphs.

To evaluate these elements, courts analyze whether imposing such a duty of reasonable care "satisfies an abiding sense of basic fairness under all circumstances in light of public policy considerations." *Est. of Desir*, 69 A.3d at 1258 (quoting *Hopkins*, 625 A.2d at 1116).

The Court begins by evaluating whether it was foreseeable to the Schools that YMCA staff members would assault children attending the summer soccer camp on the Schools' grounds. New Jersey courts look to knowledge of prior similar offenses and awareness of prior threats or acts of violence to assess if a risk of harm is reasonably foreseeable in instances of third-party criminal acts. *Coleman*, 254 A.3d at 643-44 (citing *Clohesy v. Food Circus Supermarkets, Inc.*, 694 A.2d 1017, 1023 (N.J. 1997)). In *Clohesy*, the Supreme Court of New Jersey found that the abduction and murder of an elderly woman were reasonably foreseeable and imposed a duty of care on the defendant. *Clohesy*, 694 A.2d at 1019, 1027, 1030. The *Clohesy* court considered facts including prior criminal acts on the property and in the surrounding area, the architecture and location of the parking lot, the increasing level of crime in the neighborhood, and the absence of security. *Id*. at 1027-28. In *Peguero v. Tau Kappa Epsilon Local Chapter*, 106 A.3d 565 (N.J. Super. Ct. App. Div. 2015), however, the Appellate Division found that the shooting of a guest at a fraternity party was not sufficiently foreseeable to support the imposition of a duty. *Id.* at 574. The *Peguero* court emphasized that "there was no previous pattern of criminal conduct at the fraternity members' house that would have or should have alerted the individual defendants that an unknown third-party would pull out a gun and shoot at another guest in the backyard." *Id*.

Plaintiff does not point to any prior criminal acts or any specific facts that would alert the Schools to the potential of harm that Plaintiff's alleges. Instead, Plaintiff argues that a contemporaneous change in the law (passage of CAPTA), the establishment of the National Center on Child Abuse and Neglect, his supposition that school staff were present on campus, and his

8

intuition that the risk of child abuse increases behind closed doors are enough to establish the requisite foreseeability. TAC ¶¶ 45-47, 51, 63-67, 74-77, 81. The Court disagrees. First, a general increase in public consciousness regarding child abuse does not establish the kind of foreseeability required to impose a common-law duty. While the *Clohesy* court considered information available to the general public (crime statistics) as one of several factors, New Jersey courts have not held that "such information, standing alone, is sufficient to find that an offense is reasonably foreseeable to a defendant." *Jackson-Locklear*, 2018 WL 1942521, at *4. Therefore, the passage of CAPTA, along with a general increase in public awareness surrounding child abuse, do not establish that the alleged harm sustained by Plaintiff was reasonably foreseeable. Next, even if a crime is more likely to occur behind closed doors, that does not indicate that the Schools had any knowledge of any prior acts of abuse or misconduct by YMCA staff such that the Schools could or should have expected such crimes to actually occur. Finally, the Court agrees with the Schools that the mere act of unlocking the Schools' doors would not have necessarily alerted school staff to ongoing child abuse, and that the facts that janitorial staff were at least occasionally on-site and that someone waxed the floors do not weigh in favor of imposing a duty on the Schools.

In sum, Plaintiff's TAC does not establish that the Schools owed him a duty of care. The Court, therefore, grants Defendants' motion on this ground.[4] Additionally, in the Prior Opinion, the Court warned Plaintiff that it was permitting him "one additional opportunity to file an amending pleading without prejudice." Prior Opinion at 8. Because the TAC still fails to state a claim against the Schools, the Court's dismissal is with prejudice.

---

[4] The Schools alternatively argue that even if a duty of care existed, Plaintiff failed to allege sufficient facts to establish that the Schools breached that duty. D. Br. at 7. Because the Court holds that no such duty existed, the Court does not reach this argument.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's TAC is denied with prejudice. An appropriate Order accompanies this Opinion.

Dated: April 29, 2022

*[signature]*
John Michael Vazquez, U.S.D.J.